```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                        COLUMBUS DIVISION
```

| | |
|---|---|
| MARGARET JONES, | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 4:13-CV-446 (CDL) |
| ST. FRANCIS HOSPITAL, INC., | * |
| Defendant. | * |

O R D E R

Plaintiff Margaret Jones was a radiologic technologist at Defendant St. Francis Hospital, Inc. Jones claims that St. Francis discriminated against her because of her race by suspending her and ultimately firing her, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. Jones also asserts that St. Francis took these two actions in retaliation for her charge of discrimination with the Equal Employment Opportunity Commission. As discussed below, genuine fact disputes exist on Jones's claims, so St. Francis's Motion for Summary Judgment (ECF No. 26) is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of

*material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Jones, the record reveals the following.

Jones is a black woman. She worked at St. Francis as a radiologic technologist. For the most part, she got along with her colleagues during the first couple years of her employment. But things went downhill in 2012, and Jones complained to her supervisors about perceived racial discrimination by her colleagues and then filed a charge of discrimination with the Equal Employment Opportunity Commission on September 18, 2012. Jones's supervisors were notified about the charge that month.

In October 2012, Jones's supervisors developed a plan to terminate Jones. Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. Ex. 5, Email Chain between D. Landrum and D. Robinson (Oct. 3, 2012, 16:09 EDT and 16:11 EDT), ECF No. 53-9. They decided to pull reports to determine how many x-rays Jones performed

compared to her coworkers. *Id.*; Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. Ex. 6, Email from D. Robinson to E. Tippins (Oct. 4, 2012), ECF No. 53-10. The reports, however, revealed that Jones "worked just as much as anyone else," so her work volume, "[u]nfortunately," was not a valid basis for terminating her. Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 7, Email from D. Landrum to D. Saylor (Oct. 5, 2012), ECF No. 53-11. Jones's supervisors noted that they had been advised against terminating Jones for being "disruptive" and that they could not fire her for allegedly sleeping on the job because then they "have to fire everyone who has been sleeping." *Id.* Jones's supervisors continued to look for reasons to fire her. *See, e.g.* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. Ex. 10, Email from E. Tippins to D. Robinson (Oct. 20, 2012), ECF No. 53-14.

In February 2013, a doctor realized that an x-ray in her patient's file was of the wrong patient. Jones's immediate supervisor, Lisa Tippins, and Tippins's supervisor, Deanna Robinson, investigated the incident. Three employees—Jones, Marc Kent, and Kassidy Moore—were involved in the x-ray of the patient. Kent and Moore are white. Kent and Jones were with the patient, and Moore manned the portable x-ray machine. Kent Dep. 49:4-50:3, ECF No. 41. Jones called the patient's name and the patient responded, then Moore checked the patient's name on

3

the requisition form, said they had the correct patient, and completed the x-ray. *Id.* It was not the correct patient.

Based on the incident, Jones received a final written warning and a two-day suspension without pay. Kent also received a final written warning and a two-day suspension without pay. According to Kent, Tippins told him to "take one for the team" and "keep [his] mouth closed and take the suspension" because she and Robinson were "trying to get a paper trail" on Jones and "somebody had to go down with her." *Id.* at 50:13-17, 51:8-11. Tippins also told Kent that his final written warning did not mean that he would actually be fired in the event of another incident, as it typically would for other employees (and as it did for Jones). *Id.* at 51:12-24. Moore was not disciplined at all.[1] According to Kent, Tippins decided not to discipline Moore because Moore had been written up the week before and would have to be terminated based on the second incident. *Id.* at 50:17-21.

In January 2014, another doctor complained about an x-ray in the wrong patient's file. Both Jones and Moore were involved in the incident. Each blamed the other for the mistake. Moore suggested questions for Tippins to ask Moore during the investigation of the incident. Based on their investigation,

---

[1] St. Francis argues that Moore was not disciplined because she did not do anything wrong. But Kent's testimony creates a genuine fact dispute on this point.

4

Tippins and Robinson concluded that Jones, not Moore, was to blame for the incident. After consulting with an attorney regarding the investigation, St. Francis terminated Jones.

DISCUSSION

**I.   Jones's Discrimination Claim**

Jones claims that St. Francis suspended her without pay and then terminated her because of her race.[2] Such discrimination is unlawful under Title VII and § 1981. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Both statutes "have the same requirements of proof and use the same analytical framework." *Id.* Jones did not point to any direct evidence of race discrimination, so the Court must analyze her claim under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, (1981). *Id.* at 1331. Under that framework, Jones must establish a prima facie case of discrimination. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Jones may do that by showing that she was a member of a protected class who was qualified for her position and was subjected to an adverse employment action while similarly situated employees outside her protected class were not. *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

---

[2] Jones does not claim that St. Francis took action against her because of any other protected characteristic, like gender or national origin.

If Jones establishes a prima facie case, then St. Francis may articulate a legitimate non-discriminatory reason for its actions. *Alvarez*, 610 F.3d at 1264. If St. Francis articulates a legitimate nondiscriminatory reason, then Jones must produce evidence that St. Francis's proffered reason is pretext for discrimination. *Id.*

Here, there is no serious dispute that Jones was a member of a protected class who was qualified for her job and was subjected to adverse employment actions when she was suspended and then terminated. The remaining question is whether the evidence viewed in the light most favorable to Jones would allow a reasonable juror to conclude that she was treated less favorably than a similarly situated employee outside her protected class. The answer is yes. With regard to the final written warning, Jones pointed to evidence that while she and Kent were disciplined for the exact same infraction, Tippins told Kent that he was only receiving a suspension and a warning because she and Robinson were "trying to get a paper trail" on Jones and "somebody had to go down with her." Kent Dep. at 50:13-17, 51:8-11. Tippins also told Kent that his final written warning did not mean that he would actually be fired in the event of another incident, as it typically would for other employees (and as it did for Jones). *Id.* at 51:12-24. Moreover, based on Kent's testimony, a reasonable factfinder

could also conclude that Moore was equally or more to blame for the incident, that Tippins knew it, and that Tippins decided not to discipline Moore because she had just been written up and would have to be fired for the second infraction. *Id.* at 50:15-21. With regard to Jones's termination, a reasonable factfinder could conclude that while Jones was terminated for a second patient identification error, white employees—including Kent and Moore—were not.

In sum, based on the evidence viewed in the light most favorable to Jones, a reasonable factfinder could conclude that Jones was disciplined more harshly than her white counterparts for the same conduct, and St. Francis offered no legitimate nondiscriminatory reason for doing so. Although St. Francis vigorously disputes that it engaged in discriminatory conduct, there is a fact question on this point, and summary judgment is thus inappropriate.

**II. Jones's Retaliation Claims**

In addition to her race discrimination claim, Jones contends that St. Francis retaliated against her for filing a charge of discrimination with the Equal Employment Opportunity Commission. Such retaliation is unlawful under Title VII and § 1981. *See* 42 U.S.C. § 2000e-3(a) (making it unlawful for an employer to discriminate against an employee because the employee "made a charge, testified, assisted, or participated in

7

any manner in an investigation, proceeding, or hearing under" Title VII); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008) (concluding that § 1981 "encompasses retaliation claims"). To establish a claim of retaliation under Title VII or § 1981, Jones must prove that she "engaged in statutorily protected activity," "suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (2008). If Jones establishes these elements, St. Francis may "articulate a legitimate, nonretaliatory reason for the challenged employment action." *Id.* If St. Francis articulates a legitimate, nonretaliatory reason for its decision, Jones must show that "the reason provided by the employer is a pretext for prohibited retaliatory conduct." *Id.*

St. Francis cannot seriously dispute that Jones engaged in protected activity when she filed an EEOC charge and that she suffered materially adverse actions when she was suspended without pay and then terminated. St. Francis contends, however, that Jones cannot establish a causal connection because Jones filed her EEOC charge in September 2012 and the first adverse employment action did not occur until February 2013.

Jones, however, produced evidence from which a reasonable factfinder could conclude that her supervisors started looking for reasons to fire her within a few weeks after learning of

8

Jones's EEOC charge. Jones also produced evidence suggesting that her supervisors knew that they needed to make any retaliatory discipline look legitimate. She proffered evidence that Tippins and Robinson were "trying to get a paper trail" on her, Kent Dep. 50:13-17, and she pointed to pages and pages of text messages suggesting that Moore worked with Tippins to find problems with Jones's work, *e.g.*, Jones Dep. Ex. 87, ECF Nos. 46 & 47. From this evidence, a jury could infer that Jones's supervisors had a retaliatory animus that led to the adverse employment actions. And, a jury could conclude that St. Francis's non-retaliatory reasons for its decisions (that Jones committed patient ID errors) were pretext for retaliation in light of the evidence that Jones was disciplined more harshly than similarly situated employees who did not complain of racial discrimination. Summary judgment is thus not appropriate on Jones's retaliation claims.

## CONCLUSION

For the reasons set forth above, St. Francis's Motion for Summary Judgment (ECF No. 26) is denied.

IT IS SO ORDERED, this 13th day of August, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA